# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PEOPLE OF GUAM, | CRIMINAL CASE NO. **CF0495-21** |
| | GPD REPORT NO. 21-20204 |
| vs. | |
| **MANUEL JUNIOR CABRERA TEDTAOTAO,** | DECISION AND ORDER RE. DEFENDANT'S MOTION IN LIMINE TO EXCLUDE HEARSAY EVIDENCE FROM TRIAL |
| *aka* Manuel Jr. Cabrera Tedtaotao, | |
| *aka* Manuel Cabrera Tedtaotao Jr., | |
| *aka* Manny, | |
| DOB: 07/13/1982 | |
| Defendant. | |

## INTRODUCTION

This matter is before the Honorable Maria T. Cenzon on Defendant Manuel Junior Cabrera Tedtaotao's ("Defendant") Notice of Intent to Pursue a Motion in Limine to Exclude Hearsay Evidence from Trial ("Motion").[1] Representing Defendant is Attorney Thomas Fisher. Representing the People of Guam ("the People") is Assistant Attorney General John David Griffin. After a Motion Hearing, the parties were offered the opportunity to submit supplemental briefs

---

[1] Defendant Tedtaotao was assigned numerous counsels before Attorney Thomas Fisher was appointed to represent him on May 17, 2024. The instant Motion was filed by Defendant's previous counsel James Spivey, who has since passed away. In the interim, Defendant was appointed attorneys Samuel Teker, Public Defender Service Corporation and Isa Baza, respectively, before Attorney Fisher. On July 23, 2024, Attorney Fisher filed a Notice of Intent to Pursue a Motion in Limine. The Court issued a Briefing Scheduling Order setting forth the pleadings cut-off dates and set the matter for a hearing. However, at the scheduled hearing, both the prosecution and defense then argued that the motion would be more properly addressed at the trial of the matter. The Court disagreed and scheduled further briefing. *Minutes of Hrg. of 9/29/2025* at 2:48:51 PM to 2:59:55 PM (Sept. 29, 2025).

and name any witnesses they deemed appropriate for an evidentiary hearing on the matter.[2] Neither party supplemented their filings nor requested witness testimony, so the Court took the matter under advisement pursuant to CVR 7.1(e)(6)(E) of the LOCAL RULES OF THE SUPERIOR COURT OF GUAM.

After reviewing the Defendant's Motion, the People's Opposition, and the applicable statutes and case law, the Court now issues its Decision and Order **DENYING** the Defendant's Motion in Limine.

## **PROCEDURAL HISTORY**

On September 23, 2022, a grand jury charged Defendant by Superseding Indictment with the following offenses: First Charge of Aggravated Murder (As a First Degree Felony), Second Charge of Murder (As a First Degree Felony), Third Charge of Kidnapping (As a First Degree Felony), Fourth Charge of Aggravated Assault (As a Second Degree Felony), Fifth Charge of Burglary to an Automobile (As a Second Degree Felony), and Sixth Charge of Felonious Restraint (As a Third Degree Felony). *See* Superseding Indictment (Sep. 23, 2022). Charges One, Two, and Four included special allegations for the possession or use of a deadly weapon in the commission of a felony. *Id.* A substantively similar Indictment had been returned against the Defendant on October 14, 2021.[3]

The Defendant filed the instant Motion indicating that, "The People are relying on various hearsay statements the victim made to Guam Fire Department and Guam Memorial Hospital medical staff for purposes of diagnosis and treatment of his injuries to identify the defendant as

---

[2] *Briefing Scheduling Order* (Oct. 29, 2025).
[3] The only difference between the two charging documents is the removal of "attempt" from Charges One and Two. The Victim was still alive when the Defendant was originally indicted, so he was charged with Attempted Aggravated Murder and Attempted Murder. Indictment (Oct. 14, 2021). Charges One and Two of the Superseding Indictment charged the Defendant with Aggravated Murder and Murder to reflect the Victim's death. Superseding Indictment (Sep. 23, 2022).

the perpetrator of these crimes." *Motion* at 1 ¶ 3. Further, because the victim died from his injuries he "is no longer available to testify in court." *Id.* at ¶ 4. Defendant argues that this statement should be excluded because "[t]he people have not offered any evidence that the defendant's identity may be established through a dying declaration or other exceptions to the rule against hearsay." *Id.* at ¶6 (citing to Rule 803.23 of the Guam Rules of Evidence and Rule 804(b)(2)).

The People argue simply that Rule 804(b)(2) specifically provides that the statements made under belief of impending death in a prosecution for homicide are not excluded by the hearsay rule. *People's Opp. to Def's Mot. to Exclude Victim's Dying Decl.* at 2 (Aug. 7, 2023). They contend that the numerous lacerations and severe burns that the victim John Pinaula suffered were each "probably sufficient to kill him" and that the fact he survived for two months after the attack "does not negate the very real possibility . . . that he was under the belief he was going to die as a result of his injuries" when he made the statements. *Id.*

Neither the Defendant nor the People specifically identify the particular statements sought to be excluded or admitted. A hearing was not initially held on the Motion because the Defendant's counsel passed away, and subsequent attempts at appointing counsel were unsuccessful for several months. On July 23, 2024, the Defendant's current attorney filed a Notice of Intent to Pursue a Motion in Limine; specifically, he stated that he intended to pursue the Motion in Limine to Exclude Hearsay Evidence filed on July 20, 2023. A hearing was held on September 29, 2025 at which time the Defendant indicated his intention to challenge any inadmissible hearsay during the course of the trial. Mot. Hr'g Mins. at 2:50:43–2:52:42 P.M. (Sep. 29, 2025). He added that an evidentiary hearing would be necessary to address the issue prior to trial. *Id.* at 2:54:53–2:55:33 P.M. The Court stated its preference for pre-trial rulings on admissibility and gave the parties an opportunity to submit supplemental briefing, including names of any witnesses that may be called

at an evidentiary hearing. *Id.* at 2:54:13–2:54:53 P.M.; *id.* at 2:57:20–2:59:05 P.M.; *see also* Briefing Scheduling Order (Oct. 29, 2025). No further briefing was submitted by either party, however, so the Court took the matter under advisement on January 12, 2026.

## FACTUAL BACKGROUND

The charges arise out of an incident that allegedly took place between August 20 and 21, 2021, according to the Declaration of Probable Cause filed with the Magistrate's Complaint ("Declaration" or "Magistrate's Complaint"). On the morning of August 21, 2021, a Dededo resident called emergency services to report a man "that appeared severely injured, bleeding profusely, and asking for help outside [the caller's] residence." Decl. Prob. Cause (Oct. 7, 2021). The injured man, identified as John Pinaula ("Pinaula" or the "Victim"), was transported to Guam Regional Medical City ("GRMC") by ambulance. *Id.* Pinaula's injuries included a six-inch laceration to his head that partially exposed his skull; a one-inch laceration to the tissue between his neck and shoulder; a ten-inch gash on his right calf; and severe, life-threatening third-degree burns over a significant portion of his body. *Id.* During transport from the scene, a Guam Fire Department ("GFD") Medic asked Pinaula, "Who did this to [you]?" The Victim's response was "Manny Tedtaotao." *Id.* The physician treating the Victim told Guam Police Department ("GPD") Officers that she assessed his likelihood of survival to be around five percent. *Id.*

A GPD Detective interviewed Pinaula on September 9, 2021, approximately nineteen days after he was attacked and critically injured. A second interview followed sometime later, on an unspecified date. During those interviews, Pinaula recounted the events of August 20, 2021, that led to his hospitalization. He told police that he had met with the Defendant on August 20 to discuss trading a set of darts for a car battery. *Id.* The Victim stated that he and the Defendant played darts before the Defendant asked if the Victim would take him to a residence on Swamp Road, and the

Victim agreed. *Id.* Once they arrived, both men exited the Victim's vehicle while they waited for the Defendant's nephew, who arrived shortly thereafter. *Id.* The Victim told police that the Defendant then began rummaging through the possessions in his vehicle and accused him of stealing. *Id.* Pinaula stated that the Defendant began punching him repeatedly; after he fell to the ground, the Defendant picked him up and began punching him again. *Id.* The Victim also noted that the Defendant was not alone at the scene, but he was unable to identify anyone else present while he was being attacked. *Id.* Someone cut the Victim's leg and stated, "Now you can't run away." *Id.* Pinaula was then struck in the back of the head and blacked out. *Id.* When he regained consciousness, he saw the Defendant rummaging through his vehicle, and his hands and feet were bound with either rope or an extension cord; he was wrapped in a tarp or canopy; and he was forced into the trunk of his car. *Id.* The car drove away, and the Victim recalled that at some point he "felt wet and smelled fumes." *Id.* He freed himself from his restraints, but when the vehicle came to a stop, he was pulled from the trunk and set on fire. *Id.* He ran into the jungle, where he dropped to the ground and rolled until the flames were extinguished; he waited in the jungle until the people who attacked him drove away, then exited the jungle and sought help. *Id.* The Victim died just over two months after the attack, on October 27, 2021. Opp'n at 2. His death was classified as a homicide, and an autopsy revealed that the victim died as a result of multiple injuries, including blunt force injuries to the head, sharp force injuries, and thermal injuries with complications therefrom. *Id.*

## APPLICABLE LAW

The Confrontation Clause guarantees each criminal defendant the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. That means the prosecution may introduce testimony only by calling witnesses to the stand to face cross-examination by the defendant. But

this constitutional guarantee is not absolute and comes with two sets of exceptions: First, courts may admit a witness's testimonial out-of-court statement if the prosecution establishes the witness's unavailability and shows the defendant received a "prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Second, a court may admit an unconfronted out-of-court statement if it fits a historically recognized common law exception. *Woods v. Cook*, 960 F.3d 295, 299–300 (6th Cir. 2020). Two key common law exceptions include forfeiture by wrongdoing, which permits the introduction of statements by a witness unable to testify at trial and who was "detained or kept away by the means of procurement of the defendant," *See Giles v. California*, 554 U.S. 353, 359, 128 S.Ct. 2678, 171 L.Ed.2d 488 (2008) (quotation omitted), and the "dying declaration," which allows the government to introduce testimonial statements made by a witness who is "on the brink of death and aware that he was dying." *Id.* at 358, 128 S.Ct. 2678. The "dying declaration" exception is premised on the understanding that the dying usually do not spend their last breaths lying. *Id.* Indeed, although many dying declarations may not be testimonial, *Crawford* recognizes authority for admitting dying declarations which are testimonial in nature. *Crawford*, 124 S.Ct. 1354 at fn. 6.[4]

---

[4] See *Mattox v. United States*, 156 U.S. 237, 243–44, 15 S. Ct. 337, 340, 39 L. Ed. 409 (1895)(emphasis added): "We are bound to interpret the constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a British subject,—such as his ancestors had inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a bill of rights are subject to exceptions, recognized long before the adoption of the constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried further than is necessary to the just protection of the accused, and further than the safety of the public will warrant. **For instance, there could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations. They are rarely made in the presence of the accused; they are made without any opportunity for examination or cross-examination, nor is the witness brought face to face with the jury; yet from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility. They are admitted, not in conformity with any general rule regarding the admission of testimony, but as an exception to such rules, simply from the necessities of the case, and to prevent a manifest failure of justice. As was said by the chief justice when this case was here upon the first writ of error [citation omitted], the sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath. If such declarations are admitted,**

In Guam, out-of-court statements offered for the truth of the matter asserted are inadmissible hearsay under Rule 802 of the Guam Rules of Evidence. However, the exceptions to the hearsay rule are found in Rule 803 (which applies regardless of whether the declarant is available to testify as a witness) and Rule 804 (which applies only if the declarant is unavailable). *See* GRE 803, 804. GRE 804(b)(2) contains the "dying declaration" exception and provides, in relevant part: "In a prosecution for homicide ... , a statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death." *Id.*

It is the declarant's subjective belief about impending death that makes the declaration admissible—the declarant "must have spoken without hope of recovery and in the shadow of impending death." *Shepard v. United States*, 290 U.S. 96, 99 (1933). The key to admissibility lies in what the declarant believed at the time the declaration was made.

> Fear or even belief that illness will end in death will not avail of itself to make a dying declaration. There must be "a settled hopeless expectation" that death is near at hand, and what is said must have been spoken in the hush of its impending presence. Despair of recovery may indeed be gathered from the circumstances if the facts support the inference. . . . Despair may even be gathered, though the period of survival outruns the bounds of expectation. What is decisive is the state of mind. Even so, the state of mind must be exhibited in the evidence, and not left to conjecture. The patient must have spoken with the consciousness of a swift and certain doom.

*Id.* at 100 (citation modified). The belief of impending death must be accompanied by hopelessness. *Id.* at 99–100.

---

because made by a person then dead, under circumstances which give his statements the same weight as if made under oath, there is equal, if not greater, reason for admitting testimony of his statements which were made under oath."

**A.    Circumstances tending to show the declarant's state of mind**

The declarant must believe death is imminent, but death—imminent or otherwise—is not itself a requirement of a dying declaration. Nor does a declarant need to expressly state his belief that his statement will be admissible as a dying declaration if: 1) it is offered in either a homicide prosecution; 2) at a time the declarant believed his or her death was imminent; and 3) the declaration concerned the cause or circumstance of what the declarant believed to be his or her impending death. GRE 804(b)(2). Furthermore, because dying declarations are a Rule 804 exception, the declarant must be unavailable to testify. GRE 804(b). It is not disputed that the witness is unavailable to testify, due to his death. In this case, the only matter in dispute is whether the Victim's statements were made while "believing that [his] death was imminent." GRE 804(b)(2). *United States v. Mobley*, 421 F.2d 345, 347–48 (5th Cir. 1970) (discussing circumstances tending to show that a victim was aware his death was imminent).

A declarant's subjective belief may be inferred through the declarant's words or conduct, the nature and extent of the wounds inflicted, and communications from medical staff. *Mattox v. United States*, 146 U.S. 140, 151 (1895)(see, *supra)*; *see also State v. Paschall*, 606 S.W.3d 653, 658 (Mo. Ct. App. 2020) ("[I]n the absence of an express statement, a declarant's state of mind can be inferred from objective facts such as the nature and extent of the inflicted wounds, the conduct of the declarant, and any and all circumstances that reveal his apprehension of impending death and abandonment of hope for recovery."). The amount of time that passes between a declaration and death "is one of the elements to be considered, although it is the impression of almost immediate dissolution, and not the rapid succession of death, that renders the testimony admissible." *Mattox*, 146 U.S. at 151 (citation modified).

Injuries commonly recognized as fatal generally support an inference that a declarant believed his death to be imminent. *United States v. Peppers*, 302 F.3d 120, 137 (3d Cir. 2002). Examples of the types of wounds that tend to allow such an inference are bullet wounds to vital organs, stab wounds, and mutilation, among others. *Commonwealth v. Cooley*, 348 A.2d 103, 108 n.8 (Pa. 1975). However, even if an injury is severe or fatal, the inference may be offset by other evidence, for example, testimony that the declarant was receiving life-sustaining treatment. *United States v. Lawrence*, 349 F.3d 109, 117 (3d Cir. 2003). The declarant's statements to his or her family are also relevant to the analysis, as are medical professionals' statements to the declarant. *Webb v. Lane*, 922 F.2d 390, 396 (7th Cir. 1991).

## DISCUSSION

The Defendant challenges "various hearsay statements the victim made to Guam Fire Department and Guam Memorial Hospital medical staff" because the statements do not fall within any hearsay exception. Mot. at 1. He does not develop this argument or provide further analysis, nor does he specify which of the "various hearsay statements" he objects to beyond indicating that the People would attempt to offer such statements to prove the Defendant's identity. In response, the People contend that the Victim's statements should be admitted as a dying declaration. In support, they state that the numerous lacerations allegedly inflicted by the Defendant were "probably sufficient to kill [the Victim]," and that "setting him on fire . . . was also probably sufficient to kill him." Opp'n at 2. They argue that the fact that the Victim survived for approximately two months after the attack "does not negate the very real possibility that at the time [he] spoke to the medical personnel, he was under the belief he was going to die as a result of his injuries." *Id.*

## A.    Declaration to GFD Medic

In the record before the Court, the Victim's only statement of identification made to medical personnel was on August 21, 2021. *See* Decl. Prob. Cause. While transporting the Victim to the hospital, a GFD Medic asked him "Who did this to [you]?" *Id.* The Defendant's response was "Manny Tedtaotao." *Id.*

A statement will be admissible as a dying declaration if: 1) it is offered in either a homicide prosecution or civil proceeding; 2) at a time the declarant believed his or her death was imminent; and 3) the declaration concerned the cause or circumstance of what the declarant believed to be his or her impending death. GRE 804(b)(2). Furthermore, because dying declarations are a Rule 804 exception, the declarant must be unavailable to testify. GRE 804(b). Witness unavailability is defined in subsection (a). In this case, the only matter in dispute is whether the Victim's statements were made while "believing that [his] death was imminent." GRE 804(b)(2).

In the absence of a declarant's express statement of belief in his imminent death, the Court looks to the circumstances at the time he made the declaration. *See, e.g., Mattox*, 146 U.S. at 151; *Webb*, 922 F.2d at 396. There is nothing on the record that indicates the Victim told the Medic or anyone else that he believed he was facing his imminent death. *See* Decl. Prob. Cause. However, as discussed in the cases cited, above, belief of imminent death may be established by the circumstances at the time of the declaration.

The Victim here waited for his attackers to leave the area, then sought help. *See* Decl. Prob. Cause. While seeking help may be seen as inconsistent with the actions of someone with "a settled hopelessness," courts have found otherwise. *See, e.g., People v. Siler*, 429 N.W.2d 865, 868 (Mich. Ct. App. 1988) (finding that a declarant who had recently been stabbed in the heart was conscious of impending death, as demonstrated by his phone call to emergency services and request for them

to "hurry"). The Victim's actions here are consistent with a reasonable person who is also conscious of imminent death. He waited until he felt safe from further harm, then sought help from a nearby home and summoned emergency services. Decl. Prob. Cause.

The facts that most strongly support an inference that the Victim was conscious of imminent death are the injuries he sustained from the attack. Courts have recognized in certain cases that a declarant's wounds are so severe he would not reasonably have any hope of recovery, and the injury itself may establish his consciousness of death. *State v. Chaplain*, 286 A.2d 325 (Me. 1972) (profuse bleeding from stab wounds); *Duckery v. State*, 471 S.W.2d 330 (Ark. 1971) (serious head injury); *State v. Brown*, 139 S.E.2d 609 (N.C. 1965) (severe burns); *State v. Moran*, 306 P.2d 679 (Mont. 1957) (same).

Pinaula had multiple deep gashes and severe burns all over his body. Decl. Prob. Cause. He had just been knocked unconscious, restrained, doused in gasoline, and set on fire. *Id.* A cut on his head was so deep that his skull was visible. *Id.* It is reasonable to conclude that a person in his situation would believe his death was imminent.

**B.     Statements made to GPD Detectives**

The Court also notes that the Defendant's broader objection to the Victim's statements of identification could apply to statements made during later interviews between GPD Detectives and the Victim. The Defendant does not explicitly object to them, and the People do not explicitly offer them; nevertheless, the Defendant's objection to statements of identity may incorporate some of these statements. The record before the Court is limited, but the Victim's statements to GPD Detectives are admissible because, as discussed above, the severity of his injuries is so significant that he would reasonably believe his death was imminent. The distinguishing factor is the time between the injury and the Victim's statements to GPD Detectives.

The first interview occurred approximately nineteen days after the Victim was injured. *See* Decl. Prob. Cause. But a prolonged decline is not a bar to the admission such evidence. *See, e.g., Ward v. State*, 177 S.E.2d 378 (Ga. 1970) (admitting declaration despite two-week period between injury and death when declarant's own statement supported he believed death to be imminent at the time of the declaration); *Emmett v. State*, 25 S.E.2d 9 (Ga. 1943) (finding three-and-a-half–month period between death and declaration did not prevent admissibility considering the severity of the declarant's head wounds).

A worsening condition can lead a victim to feel the ultimate sense of hopelessness necessary in a dying declaration. Unlike the victim in *Shepard*, who experienced a brief period of improvement before succumbing to her injuries, Pinaula suffered severe head injury and thermal injuries caused by severe burns over a large portion of his body. Opp'n at 2. Recognizing the severity of the Victim's injuries, any declarations the Victim made concerning the cause of his death will be admissible.

## CONCLUSION

For the reasons discussed above, the Court **DENIES** the Defendant's Motion in Limine to Exclude Hearsay Evidence From Trial.

**SO ORDERED** this ___ **APR 2 7 2026** ___.

**HONORABLE MARIA T. CENZON**
Judge, Superior Court of Guam

SERVICE VIA E-MAIL
I acknowledge that an electronic copy of the original was e-mailed to:
AOS T. Fisher

APR 2 7 2026
Date: _____ Time: 4:31
Evan L. Topasna
Deputy Clerk, Superior Court of Guam